274 P.2d 831

NATIONAL PRODUCE DISTRIBUTORS, Inc., a corporation, Plaintiff-Appellant,

v.

MILES & MEYER, Inc., a corporation, A. H. Meyer & Sons, a copartnership, consisting of Jack Meyer, A. H. Meyer and I. H. Meyer, Idaho Falls Bonded Produce & Supply Co., a corporation, Defendants,

Idaho Falls Bonded Produce & Supply Co., a corporation, Defendant-Respondent.

No. 8197.

Supreme Court of Idaho.

Sept. 30, 1954.

462

Alvin Denman, Reginald R. Reeves and Alvin L. Denman, Idaho Falls, for appellant.

Albaugh, Bloem, Barnard & Smith, Idaho Falls, for respondent.

THOMAS, Justice.

Appellant brought an action in conversion against Miles & Meyer, Inc., a corporation, as seller, A. H. Meyer & Sons, a copartnership, as mortgagee, and Idaho Falls Bonded Produce & Supply Co., a corporation, respondent herein, arising out of a written contract dated April 27, 1953, which was pleaded haec verba in the complaint and is in the following language:

> "This agreement made this 27th day of April 1953 between National Produce Distributors, Inc., herein termed

Buyer, and Miles & Meyer, Inc. Rigby, Idaho, herein termed Seller.

"The Buyer agrees to purchase and the Seller agrees to sell and deliver unto the Buyer the following described farm produce under the terms, covenants and conditions hereinafter set out.

"Commodity Certified Seed Potatoes (Blue Tag) or US number 1's Washed Size A 2 in. Min.

"Quantity 2880—100 pound bags back for 1440—bags FOB Truck Ashton, Idaho

"Price As per agreement (1 bag Certified seed now for 2 bags Buyer's demand)

"Date and Place of Delivery Buyer delivers, FOB Truck Ashton—Seller delivers FOB Car or Truck, Rigby, Idaho

"Grade or Class Buyer delivers Blue Tag Certified Seed—Seller as per agreement—

"Method of Payment Upon demand of Buyer, either harvest time or later date as stated in Special Conditions.

"Where Crops Are Situated Legal description as follows:

"It is Understood That if the Seller refuses to harvest or deliver in accordance with the terms hereof, or fails to care for said crops in a farmerlike manner, the Buyer may enter said property, care for and harvest the crops and transport and the same to the above named place of delivery, and any expenses incurred shall be paid by the Seller herein.

\*     \*     \*     \*     \*     \*

"It Is Further Understood That any special agreement shall be written on the reverse side hereof, and when so written and signed by the parties becomes a part of this, the original agreement.

"Special Conditions: The buyer has option to take delivery at harvest time or to have the Seller store Potatoes in a cellar where they may be eligible for certification or loaded FOB Car or Truck US number 1's Washed Size A 2 inch minimum in New bags properly Graded or Tagged without charge as to storage, grading or shrinkage at any time Buyer Demands Delivery. Seller to have Two to Five (2–5) Days' notice before delivery of Potatoes contracted for.

\*     \*     \*     \*     \*     \*

"The aforementioned seed potatoes to be sown and grown shall be so sown and grown upon the following described property to-wit:" (Description of some 90 acres of land is inserted).

The complaint alleges as a first cause of action against Miles & Meyer, Inc., that the potatoes were planted and grown on the ninety acres of land described in the contract and that pursuant to the agreement appellant sold 1,440 100-pound bags of certified blue tag seed potatoes and that Miles

& Meyer, Inc., produced 2,880 100-pound bags of US number 1's washed size A 2 inch minimum potatoes, and that approximately 2,700 bags of said potatoes were in the Miles & Meyer warehouse at the time the complaint was filed herein; that on the 3rd day of February, 1954, appellant demanded delivery of the possession of the potatoes from defendant Miles & Meyer, Inc., which delivery was refused.

As a second cause of action against respondent only, appellant alleged additionally that on the 16th day of February, 1954, Idaho Falls Bonded Produce & Supply Co. unlawfully took and carried away approximately 2,880 bags of potatoes and converted them to its own use and to the damage of plaintiff.

As a third cause of action, directed against A. H. Meyer & Sons, a co-partnership, appellant alleged that on September 8, 1953, Miles & Meyer, Inc., executed and delivered a mortgage to said partnership covering a portion of the potatoes described in the complaint and alleged that appellant's right and title to the potatoes so mortgaged were superior to that of the partnership.

Idaho Falls Bonded Produce & Supply Co., a corporation, demurred to the complaint on the ground it failed to state a cause of action against it. The demurrer was sustained and from an order sustaining the demurrer and a judgment of dismissal this appeal was taken.

Following entry of the judgment of dismissal as to respondent, appellant prosecuted the matter to judgment against the remaining defendants. Execution upon such judgment was made and returned unsatisfied.

In an action for conversion it is necessary to allege that the plaintiff is the owner of the property claimed to be converted or that he is in the possession or entitled to possession thereof at the time of the alleged conversion. Schlieff v. Bistline, 52 Idaho 353, 15 P.2d 726; Western Seed Marketing Co. v. Pfost, 45 Idaho 340, 262 P. 514; Bertleson v. Van Deusen Brothers Co., 37 Idaho 199, 217 P. 983; Portland Seed Co. v. Clark, 35 Idaho 44, 204 P. 146; Mark P. Miller Milling Co. v. Butterfield-Elder Co., 32 Idaho 265, 181 P. 703; 53 Am.Jur., Trover and Conversion, sec. 168, p. 937; see also 53 Am.Jur., sec. 29, p. 822 and secs. 66, 67 and 68, pp. 860–864.

Appellant did not allege that he was the owner of, or that he was entitled to the possession of, the potatoes at the time of the alleged conversion. It is the apparent contention of appellant that the contract which was pleaded in haec verba is ambiguous and, hence, it was for the jury to determine, upon all the evidence in relation to and the facts surrounding the execution of the contract, the intention of the contracting parties and that submitting the matter to the jury would have established that the title and right to possession had

passed to appellant at the time the action in conversion was filed.

■ While it is true that where the terms of a contract are ambiguous its interpretation and meaning is a fact question to be determined by the jury, Shipman v. Kloppenburg, 72 Idaho 321, 240 P.2d 1151; Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Fullmer v. Proctor, 59 Idaho 455, 82 P.2d 1103; Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651, 94 A.L.R. 1264; Elliott v. Pope, 42 Idaho 505, 247 P. 796; Clinton Sheep Co. v. Ogee, 34 Idaho 22, 198 P. 675; Idaho Implement Co., Ltd., v. Lambach, 16 Idaho 497, 101 P. 951, yet, on the other hand, where a contract is clear and unambiguous, not involving any absurdities or contradictions, it is the best evidence of the intent of the parties and hence a determination of its meaning and its legal effect are a question of law for determination by the court. Fullmer v. Proctor, supra; Molyneux v. Twin Falls Canal Co., supra; Peterson v. Universal Automobile Ins. Co., 53 Idaho 11, 20 P.2d 1016; Hinsch v. Mothorn, 44 Idaho 539, 258 P. 540; Mark P. Miller Milling Co. v. Butterfield-Elder Co., 32 Idaho 265, 181 P. 703; Carlson v. Crescent Woodenware & Box Mfg. Co., 20 Idaho 794, 120 P. 460; Idaho Implement Co., Ltd., v. Lambach, supra.

■ An examination of the whole of the contract in this case discloses that it is clear and unambiguous. Under the contract appellant is expressly designated as the buyer and Miles & Meyer, Inc., as the seller; moreover, the buyer expressly agrees to purchase and the seller agrees to sell and deliver 2,880 100-pound bags of certified seed potatoes (Blue Tag) or US number 1's Washed Size A 2 inch minimum; the consideration for such quality and quantity of potatoes was 1,440 bags of potatoes which were at the time of the execution of the contract delivered to the seller by the buyer; the contract contemplated that the potatoes delivered to the seller would be planted in the Spring of 1953 upon lands specifically described in the contract; that following the harvest the seller would at the option of the buyer deliver 2,880 bags of a definite weight and quality at that time or store them where they would be eligible for certification or load them FOB car or truck properly graded or tagged at any time the buyer should demand delivery after having given from two to five days notice to the seller.

■■ As heretofore pointed out, it was necessary for appellant to allege that title to the property in question had passed to it and that it was entitled to possession thereof at the time of the alleged conversion. If the contract was completely executed and there was nothing left to be done thereunder, except delivery as between the immediate parties thereto, then title to the property was vested in appellant at the time of the alleged conversion and he was entitled to immediate possession thereof;

on the other hand, if the sale is not of specific goods but something remains to be done to identify the subject matter of the contract or to discriminate it from other goods with which it is connected, as a general rule the contract is executory and no title will pass to the buyer until the goods are inspected, identified, ascertained, segregated and appropriated to the contract. Western Seed Marketing Co. v. Pfost, supra; Bertleson v. Van Deusen Brothers Co., supra; Portland Seed Co. v. Clark, supra; Brown v. Feeler, 35 Idaho 57, 204 P. 659; Clinton Sheep Co. v. Ogee, supra; 46 Am.Jur., Sales, secs. 423 and 424, pp. 592 and 593; 77 C.J.S., Sales, §§ 250, 251, 253, pp. 1034–1037, 1038–1041. See also Section 64–201, I.C.

■ Under the clear and implicit provisions of the contract the potatoes were subject to delivery upon demand; additionally, other things were to be done under the contract, namely, ascertaining the quality of the potatoes as to grade which would require an inspection, identification and segregation, followed by the appropriation of such potatoes to the contract if they met the standard of quality provided in the contract; until these steps were taken they constituted a part of a general mass the constituents of which would differ in size, weight, quality and value. It is to be observed from an examination of each and all the terms and conditions of the contract that the potatoes called for in the contract must meet the quality and grade provided for therein; it could not have been fulfilled by the delivery of any other grade or quality of potatoes. Because it was necessary to identify, separate, segregate and appropriate the goods to the contract before it would constitute an executed contract it necessarily follows that the contract was executory and that neither title nor the right to immediate possession was vested in appellant at the time of the alleged conversion. Black v. Darrah, 71 Idaho 404, 233 P.2d 415; Western Seed Marketing Co. v. Pfost, supra; Bertleson v. Van Deusen Brothers Co., supra; Portland Seed Co. v. Clark, supra; Brown v. Feeler, supra; Headrick v. Fair, Tex.Civ.App., 99 S.W.2d 653.

■ Had the potatoes, the subject matter of this action and contract, been lost or destroyed at any time before the action for conversion was instituted neither this respondent nor the seller could have successfully contended that the loss would have been the loss of this appellant. One of the tests that is usually a decisive test as to whether the contract is executed or executory is to determine at whose risk the subject matter of the contract is prior to the delivery under the terms of the contract; if the risk of loss or destruction is that of the buyer the contract is executed and if such risk rests with the seller the contract is executory. Peterson v. Universal Automobile Ins. Co., 53 Idaho 11, 20 P.2d 1016; Idaho Products Co. v. Bales, 36 Idaho 800, 214 P. 206; Mark P. Miller

Milling Co. v. Butterfield-Elder Co., supra. See also 46 Am.Jur., Sales, sec. 412, p. 584.

Having reached the conclusion herein that the sales contract was executory and that the title had not passed to the buyer at the time of the alleged conversion, it follows that the judgment of dismissal should be and hereby is affirmed.

Costs to respondent.

PORTER, C. J., and GIVENS, TAY-LOR and KEETON, JJ., concur.