**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 35576**

| | | |
|---|---|---|
| JAMES C. CARPENTER, | ) | Boise, December 2009 Term |
| | ) | |
| Respondent, | ) | 2010 Opinion No. 19 |
| v. | ) | |
| | ) | Filed: February 19, 2010 |
| TIM TURRELL and PEGGY TURRELL, | ) | |
| husband and wife, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | |
| Appellants. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The judgment of the district court is <u>affirmed</u> in part and <u>vacated</u> in part. Costs to Respondent.

Dean & Kolts, LLP, Coeur d'Alene, for appellants. Charles R. Dean argued.

James A. Raeon, Coeur d'Alene, for respondent.

---

W. JONES, Justice

**FACTS AND PROCEDURAL HISTORY**

On May 23, 2003, Respondent, James Carpenter, purchased two portable buildings for which Carpenter testified he paid twenty thousand dollars cash. When transporting the larger of the two buildings, Herbert Turrell drove by, and because Carpenter was blocking the road, the two began talking. At that time, Herbert allegedly offered to allow Carpenter to store the buildings on his property. Carpenter initially planned on storing the buildings on his own property, but because of the size of the buildings, he was going to face difficulty fitting the buildings through a gate at the entrance of his property. Carpenter testified that Herbert said, "Just bring them up to my house and leave them as long as you'd like." At the time, Herbert and Carpenter were neighbors, and Herbert already had an assortment of old vehicles and buildings on his property. Herbert died in June of 2005, and Herbert's wife, Marian Turrell, continued to live on their property.

1

After Herbert's death, Tim Turrell (Tim), Herbert's son and an appellant in this action, began cleaning up his parents' property so that it could be sold to pay for the cost of his mother's nursing home care. As part of his cleanup effort, on November 29, 2006, and December 8, 2006, Tim sold the two portable buildings. In March of 2007, aware that Herbert had passed away, Carpenter contacted Tim to determine the status of the two buildings. Tim admitted that at that time he told Carpenter that he "had them hauled off."

Carpenter subsequently filed a lawsuit against Appellants, Tim Turrell and his wife, Peggy Turrell, for conversion of the portable buildings. Following a bench trial, the district court requested post-trial briefing from both parties. In making its ruling, the district court relied upon the oral testimony of James Carpenter, the respondent; Marian Turrell; Tim; Tom Turrell, Tim's brother; and David Bonder, James Carpenter's friend. The district court eventually found Carpenter's explanation to be more credible than Tim's explanation, and the district court, in its Memorandum Decision, Findings of Fact, Conclusions of Law and Order, found Carpenter to have been the owner of the two portable buildings and found that Carpenter had entered into an oral, gratuitous bailment agreement with Herbert and Marian for the storage of the two buildings. In addition, the court found Tim to have committed conversion when he sold Carpenter's two portable buildings.

The Turrells claimed that when selling the buildings, Tim was acting as the personal representative of his late father's estate, and that as a result, any wrongful conduct on Tim's part is the responsibility of Herbert's estate. Consequently, the Turrells argue that I.C. § 9-202(3)[1], also known as the Dead Man's Statute, should have barred Carpenter from testifying about communications he had with Herbert prior to his death. The district court, however, found Tim to have been acting in his personal capacity when selling the portable buildings, not as a personal representative of his father's estate. Idaho Code § 9-202(3) provides:

§ 9-202. Who may not testify.
The following persons cannot be witnesses:
1. . . . .
2. . . . .
3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person, as

---

[1] Idaho Code § 9-202(3) is identical to Idaho R. Evid. 601(b).

to any communication or agreement, not in writing, occurring before the death of such deceased person.

The court also found I.C. § 9-202(3) to be inapplicable because Herbert's estate was not a party or named defendant in the matter. The Turrells were ordered to pay Carpenter eighteen thousand dollars, which the district court found to be the fair market value of the two portable buildings. On August 6, 2008, the Turrells filed a timely notice of appeal.

## ISSUES ON APPEAL

I.  Whether the district court wrongly held that I.C. § 9-202(3) is inapplicable to this case.

II.  Whether the district court wrongly held that Tim was not acting as the personal representative of Herbert Turrell's estate when he sold the two portable buildings.

III.  Whether Carpenter has used a "backdoor" to circumvent I.C. § 9-202(3).

IV.  Whether a claimant/bailor must show that he had a right to immediate possession of his property in order to hold a bailee liable for conversion.

V.  Whether the district court's judgment was for conversion, breach of contract, or gross negligence.

VI.  Whether the district court erred when entering a judgment for conversion against Peggy Turrell in her personal capacity.

VII.  Whether Carpenter is entitled to an award of attorney fees on appeal.

## STANDARD OF REVIEW

When a bench trial has been conducted, the court's findings of fact should not be disturbed unless they are clearly erroneous. Idaho R. Civ. P. 52(a); *In re Williamson*, 135 Idaho 452, 454, 19 P.3d 766, 768 (2001). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did. The Court inquires whether the findings of fact are supported by substantial and competent evidence." *In re Williamson*, 135 Idaho at 454, 19 P.3d at 768. "This Court will not substitute its view of the facts for the view of the district judge." *Id.* (citing *Carney v. Heinson*, 133 Idaho 275, 281, 985 P.2d 1137, 1143 (1999)). "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id.*

If there is no genuine issue of material fact, and only a question of law remains, this Court exercises free review. *Mendenhall v. Aldous*, 146 Idaho 434, 436, 196 P.3d 352, 354 (2008) (citing *Watson v. Weick*, 141 Idaho 500, 504, 112 P.3d 788, 792 (2005)).

## DISCUSSION

**I.  This Court affirms the district court's holding that I.C. § 9-202(3) is inapplicable.**

3

The Turrells claim that the district court found I.C. § 9-202(3) to be inapplicable because Tim, prior to selling the portable buildings, had not become the formally appointed personal representative of the estate. Accordingly, the Turrells assert two sub-issues they would like decided on appeal: "[W]hether Idaho's 'Dead Man's Statute' [I.C. § 9-202(3)] applies to trustees under a living trust and whether the statute applies when no formal probate is instituted." The Turrells assert that the rationale behind I.C. § 9-202(3) exists regardless of whether formal appointment was obtained. The purpose of I.C. § 9-202(3), the Turrell's argue, is to prevent a party from giving self-serving testimony about conversations or transactions with a deceased person.

Carpenter argues that the Turrells have incorrectly interpreted the district court's justification for finding I.C. § 9-202(3) to be inapplicable; Carpenter argues that the district court found I.C. § 9-202(3) to be inapplicable because Herbert's estate was not a party or a named defendant in the lawsuit.

The district court found I.C. § 9-202(3) to be inapplicable because Herbert's estate was not a named defendant in the suit, and this Court affirms the district court's holding. Idaho Code § 9-202(3) provides that the following people cannot be witnesses at a trial:

> Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any communication or agreement, not in writing, occurring before the death of such deceased person.

Under this language, in order for I.C. § 9-202(3) to be operative, there must be a claim or demand against a decedent's estate. *E.g., Webster v. Magleby*, 98 Idaho 326, 328, 563 P.2d 50, 52 (1977) (holding that I.C. § 9-202(3) "applies only to claims against the estate of a deceased person."). Because a claim or demand was not made against Herbert's estate, the district court properly denied application of I.C. § 9-202(3).

Furthermore, Carpenter would not have a cause of action against Herbert's estate unless Tim was acting as an agent for the estate at the time he converted the buildings and there is no evidence to that effect. Yet, even if he were acting as an agent, Tim would still be personally liable for his tortious conduct, *Forbush v. San Diego Fruit & Prod. Co.*, 46 Idaho 231, 244, 266 P. 659, 664 (1928) (stating that "[t]he general rule is that an agent, however innocent, who wrongfully interferes with the property of another, is liable in conversion."), and Carpenter could seek redress by suing Tim and not the estate.

4

**II.** **This Court affirms the district court's finding that Tim Turrell was not acting as the personal representative of Herbert Turrell's estate when he sold the portable buildings.**

The Turrells admit that Tim was never formally appointed to be the personal representative of Herbert's estate. The Turrells, however, claim formal appointment was unnecessary for application of I.C. § 9-202(3). The Turrells argue that Tim became the personal representative of the estate because his mother, Marian, was too old and was in poor health, and his brother, Terry, lived several hundred miles away. Tim, however, had not been appointed to act as the personal representative by order of the court, as required in order to become a personal representative. *See* I.C. § 15-3-103 ("Except as otherwise provided in chapter 4 of this code, to acquire the powers and undertake the duties and liabilities of a personal representative of a decedent, a person must be appointed by order of the court or registrar, qualify and be issued letters."). Because Tim was not the personal representative of the estate and was sued in his individual capacity, I.C. § 9-202(3) does not apply.

**III.** **This Court finds that Carpenter has not attempted to "backdoor" I.C. § 9-202(3).**

The Turrells claim that the district court wrongly applied form over substance when declining to apply I.C. § 9-202(3). Under the district court's reasoning, the Turrells argue, a claimant whose testimony would be barred under I.C. § 9-202(3) if an action were brought against the estate could sue the personal representative in her individual capacity and effectively avoid application of I.C. § 9-202(3). There is sufficient evidence, however, to support the district court's finding that the suit was properly filed against Tim in his individual capacity. *In re Williamson*, 135 Idaho at 454, 19 P.3d at 768 (stating that when a bench trial has been conducted, the trial court's findings of fact should not be disturbed unless they are clearly erroneous). When selling the buildings, Tim signed the receipt for the sale of the buildings in his individual capacity, and as discussed in Section II, the estate was not a party to the lawsuit. Consequently, this Court affirms the district court's decision to disallow application of I.C. § 9-202(3).

The Turrells cite *Kolouch v. First Sec. Bank of Idaho*, 128 Idaho 186, 991 P.2d 779 (Ct. App. 1996), to demonstrate that a court has applied I.C. § 9-202(3) despite the fact that there was not a claim against the estate of a deceased person; however, the Turrells' reliance upon *Kolouch* is misplaced. In *Kolouch*, the personal representative took funds from the estate to pay a claim she allegedly had against the estate. After she was removed as personal representative, the heirs

brought an action to recover those funds. She sought to introduce the alleged oral agreement with the decedent to defend against having to return the funds, but the trial court held such evidence barred by Idaho Code § 9-202(3). The court of appeals, for equitable purposes, affirmed the lower court's ruling. The court of appeals reasoned that although the lawsuit was filed by beneficiaries of the decedent's estate and not against the decedent's estate, as required under I.C. § 9-202(3), personal representatives should not be able to circumvent I.C. § 9-202(3) by seizing assets of an estate and thus forcing heirs to commence legal action to recover the assets. *Id.* at 194, 991 P.2d at 787. The rationale of *Kolouch* therefore is of no benefit to Tim because of the significant factual distinctions between the facts in *Kolouch* and the instant case. This was not an action against Carpenter to recover assets he allegedly wrongfully took from Herbert's estate based upon an oral agreement with Herbert.

**IV.    This Court affirms the district court's finding that Carpenter had a right to immediate possession of his property.**

The Turrells, in their post-trial brief, argued that in order "[t]o establish the tort of conversion, [Carpenter] . . . had to prove that a demand for return of the buildings was made on Tim . . . and that the demand was wrongfully rejected." The district court was perplexed by the Turrells' argument; the district court, however, disposed of the argument by finding that Carpenter had demanded possession of the portable buildings, and that Tim had refused to grant possession.

"Generally, conversion is defined as a distinct act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with [his] rights therein." *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 743, 979 P.2d 605, 616 (1999). Tim committed the tort of conversion when he disposed of Carpenter's buildings, as he wrongfully asserted dominion over Carpenter's buildings in a manner inconsistent with Carpenter's rights in them.

On appeal, the Turrells claim that Carpenter has failed to establish a required element of conversion because he failed to prove that he had the right to immediate possession of the buildings. The Turrells cite *Luzar v. Western Surety Co.*, 107 Idaho 693, 692 P.2d 337 (1984); *Forbush v. San Diego Fruit & Produce Co.*, 46 Idaho 231, 266 P. 659 (1928); and *Portland Seed Co. v. Clark*, 35 Idaho 44, 204 P. 146 (1922), in support of their proposition; none of these cases, however, are applicable to this case.

The Turrells cite *Luzar* for the general proposition that a claimant, in order to establish conversion, must show that he was entitled to immediate possession of the property allegedly

converted. The Turrells' interpretation of *Luzar*, however, is taken out of context and is inapplicable to this case. In *Luzar*, this Court held that where the owner had given possession of his property to another under the terms of a contract, pledging the property as security for an obligation, the secured party would not be wrongfully exercising dominion over the property by refusing to return it upon demand if it had a contractual right to continue retaining possession of the property. 107 Idaho at 695–96, 692 P.2d at 339–40. There is no contention in this case that Tim had a contractual right to retain possession of the buildings as against Carpenter, and even if he had, it would be irrelevant because he committed conversion by selling the buildings, not by refusing to deliver possession of them upon demand.

In addition, the Turrells' reliance upon *Forbush v. San Diego Fruit & Produce Co.*, 46 Idaho 231, 266 P. 659 (1928), and *Portland Seed Co. v. Clark*, 35 Idaho 44, 204 P. 146 (1922), is erroneous. In *Forbush*, potatoes subject to the plaintiff's mortgage had been placed in storage at a warehouse. *Forbush*, 46 Idaho at 242–43, 266 P. at 661. The plaintiff demanded possession of the potatoes from the warehouseman, who refused to release them. *Id.* This Court held that for plaintiff to recover damages for conversion, she had to prove her lien and a right to immediate possession. *Id.* at 43, 226 P. at 663. Because the terms of the mortgage gave her the right to immediate possession of the potatoes once they were harvested, her judgment against the warehouseman was sustained. *Id.* Here, Carpenter did not merely have a lien on the buildings; he was the owner of the buildings. Tim did not merely refuse to deliver possession of the buildings upon demand; he had disposed of them by selling them. In *Portland Seed Co.*, the defendant had contracted to sell his growing crop of clover seed to the plaintiff once it was harvested, threshed, recleaned, sacked, and shipped to Portland. *Portland Seed Co.*, 35 Idaho at 47, 204 P. at 146. This Court held that the contract buyer could not bring an action for conversion where he did not have title to the seed or the right to its possession. *Id.* He merely had an executory contract to purchase it. Carpenter did not merely have an executory contract to purchase the buildings at the time Tim sold them; he was the owner of the buildings.

**V.     This Court holds that the district court entered judgment against the Turrells for conversion, not breach of a bailment contract or gross negligence.**

The Turrells argue that Carpenter's complaint alleged one cause of action: conversion. Because negligence or breach of a bailment contract was never pled, briefed, or argued, the Turrells claim that it was improper for the district court to have used them as a basis to award damages.

7

Much of this case in the district court revolved around the question of a gratuitous bailment. In fact, the case has little, if anything, to do with whether a bailment was or was not created. The facts of this case establish a simple case of conversion in that there was substantial competent evidence to support the district court's finding that Carpenter in fact owned the two portable buildings. The district court spent considerable time discussing gross negligence and the bailment agreement; however, these issues were discussed merely to respond to an issue raised by the Turrells. It is clear from the court's holding that the Turrells were found liable for conversion, not for gross negligence or for breach of a bailment agreement. The district court explicitly stated "Tim Turrell is liable to Carpenter for Damages resulting from his wrongful conversion of Carpenter's buildings."

## VI.  This Court vacates the district court's judgment against Peggy Turrell in her personal capacity.

After finding Tim to have committed conversion, the district court entered a judgment in the amount of eighteen thousand dollars against both Tim and Peggy Turrell in their personal capacities.

The Turrells argue that the district court improperly named Tim's wife, Peggy Turrell, as a judgment debtor. The Turrells claim that Carpenter did not offer any evidence that Peggy was involved in the sale of the portable buildings, and as such, Peggy's separate property should not be subject to execution. As the judgment stands, the Turrells argue, Carpenter has the option to execute not only on their community property and Tim's separate property, but on Peggy's separate property, if any, as well.

Carpenter argues that the judgment entered against Peggy should be upheld because the tortious conduct benefited the community and because the judgment can be satisfied out of community assets.

This Court vacates the judgment entered against Peggy Turrell in her personal capacity. There is absolutely no proof that Peggy participated in the conversion. Moreover, as explained in *Twin Falls Bank & Trust Co. v. Holley*, 111 Idaho 349, 352-53, 723 P.2d 893, 896-97 (1986), whether or not Tim's tortious act benefited the community does not change the law regarding personal liability and does not make one spouse personally liable for the obligation of the other.

## VII.  This Court holds that Carpenter is entitled to attorney fees on appeal.

Carpenter argues that attorney fees on appeal are warranted because the Turrells have done no more than ask this Court to second-guess the district court and reweigh the evidence. In

addition, Carpenter argues attorney fees should be awarded because the Turrells have not made a substantial showing that the district court misapplied the law.

The Turrells argue that they have not challenged the district court's factual findings, but instead, have challenged legal conclusions drawn from the facts. In addition, the Turrells assert that attorney fees are not warranted because their arguments are supported in fact, and their legal arguments are warranted under current law or can be supported by a good faith extension or modification in the law.

This Court grants attorney fees to Carpenter under I.C. § 12-121, as he prevailed on the primary issues before this Court. The Turrells have done little more than ask this Court to second-guess the district court's factual findings, *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 120, 794 P.2d 1389, 1393 (1990), and the issues asserted on appeal were frivolous and without foundation. *Cecil v. Gagnebin*, 146 Idaho 714, 718, 202 P.3d 1, 5 (2009). The Turrells succeeded on their claim that the judgment should not have been entered against Peggy Turrell; yet, that was an inconsequential issue that does not dissuade this Court from awarding attorney fees on appeal. As the judgment against Peggy has been vacated, attorney fees are to be paid by Tim Turrell.

## CONCLUSION

For the foregoing reasons, this Court affirms the district court's holding that I.C. § 9-202(3) is inapplicable to this case. This Court also affirms the district court's finding that Tim Turrell was not acting as a personal representative of Herbert Turrell's estate when he sold the portable buildings, and that Carpenter showed that he had a right to immediate possession of his property and that Tim Turrell was liable for conversion. This Court vacates the judgment that was entered against Peggy Turrell in her personal capacity. In addition, this Court grants Carpenter's request for attorney fees against Tim Turrell on appeal. Costs to Carpenter.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR**